**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| United States of America, | File No. 13-cr-135 (DWF/TNL) |
| Plaintiff, | **REPORT** |
| | **&** |
| v. | **RECOMMENDATION** |
| David Strusinski, | |
| Defendant. | |

Andrew S. Dunne, **United States Attorney's Office**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for Plaintiff); and

Douglas Olson, **Office of the Federal Defender**, 300 South Fourth Street, Suite 107, Minneapolis, MN 55415 (for Defendant).

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (ECF No. 20) and Motion to Suppress Statements, Admissions, and Answers (ECF No. 21). This matter has been referred to the Court for report and recommendation pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1(a)(3)(A).

On July 11, 2013, this Court held a hearing on the Motions. United States Postal Service Inspector June Beinhorn testified, and the following Government Exhibits were offered and received:

1. A search warrant for an address in Hugo, Minnesota (including the warrant itself, application and affidavit in support of the same, and receipt, inventory, and return of the same) (Ex. 1);

2. A search warrant for information held by Yahoo, Inc. associated with the "krystalviolet" Yahoo profile, "krystalviolet3930@yahoo.com" email address, and a "krystalviolet3930" Flickr profile (including the warrant itself, application for and affidavit in support of the same, and return for the same) (Ex. 2); and

3. A transcript of an interview with Defendant conducted by Inspector Beinhorn on January 7, 2011 (Ex. 3).

**I.**

Based upon the file and documents contained therein, along with the testimony and exhibits presented, the undersigned Magistrate Judge makes the following:

**FINDINGS**

**A.  Toronto Investigation**

In late December 2010, police in Toronto, Canada, were involved in an undercover internet operation involving child pornography. (Application 1-4, Ex. 1.) Through the course of the investigation, Canadian police downloaded images and videos from a file-sharing program user in Switzerland. (*Id.* at 1-5.) These images were located in a file named "krystalviolet3930@yahoo.com." (*Id.*)

The images obtained included child pornography involving an adult female as well as innocuous pictures. (*Id.*) Further investigation of two of these images revealed additional information about the adult female depicted in both the pornographic and

innocuous images. (*Id.*) A picture of two women with a child was found on another website, whose caption identified the younger woman as K.N. of Stacy, Minnesota, with her mother and daughter. (*Id.*) Another image featured a woman and child with a birthday cake. (*Id.*) The birthday cake candles indicated that it was someone's 25th birthday. (*Id.*) The photo is date stamped "23/02/2010." (*Id.*) A review of K.N.'s Minnesota driver's license record indicated that K.N. would have turned 25 the day before the date stamp. (*Id.*) Investigative information determined that the woman in the shopping and birthday photos is the same woman in the pornographic photos. (*Id.*)

Toronto police ran K.N.'s name through a database that provides names, phone numbers, and addresses based on information in public records. (*Id.*) The search revealed that K.N. resided at an address in Hugo, Minnesota ("the Hugo address"). (*Id.*)

Toronto police subsequently conducted an undercover chat with krystalviolet3930@yahoo.com. (*Id.*) Through this conversation, they learned that K.N. was 25 years old and has two children, a seven-year-old son and two-year-old daughter. (*Id.*) Toronto police also learned that K.N. and her children live with K.N.'s mother in a suburb of Saint Paul, Minnesota. (*Id.*) The correspondence also confirmed that K.N.'s last name is "N." (*Id.*)

**B.    U.S. Investigation**

The same day Toronto police corresponded with K.N. through the krystalviolet3930@yahoo.com account, Toronto police forwarded the information they obtained to the United States Postal Inspection Service. (*Id*. at 1-6.) An administrative subpoena was subsequently obtained for the internet protocol ("IP") address from which

K.N.'s emails were sent. (*Id.*) The administrative subpoena revealed that the IP address from which K.N.'s emails were sent was assigned to a customer at the Hugo address. (*Id.*) Defendant was also listed as an additional customer at the Hugo address. (*Id.*)

Inspector Beinhorn testified that she became involved in the investigation that same day as well. Searching driver's license information, Inspector Beinhorn found an individual named K.N., with a matching age and birthdate, who resided in Stacy, Minnesota. (*Id.*) Postal records also indicated that K.N. received mail at the same Stacy address. (*Id.*)

In addition, a deputy from the Washington County Sheriff's Department went to the Hugo address and confirmed that the residence contained a deck and fence that appeared to match a picture provided by the Toronto police which showed K.N. sitting on a deck with a fence in the background. (*Id.*)

The investigation subsequently revealed two additional IP addresses associated with the krystalviolet3930@yahoo.com account based on recent logins. (*Id.*) Another administrative subpoena established that these IP addresses were also assigned to the Hugo address.

C.     **Search Warrant**

A search warrant was obtained for the Hugo address and executed on January 7, 2011. (Return 1-2, Ex. 1.) When the warrant was served, Inspector Beinhorn and Washington County Sheriff's Detective Mark Rindfleish spoke briefly with Defendant. (*See* Ex. 3.) Defendant was advised of his rights, answered a few questions, and then asked for a lawyer, at which point the interview terminated. (Ex. 3 at 2-3.)

4

D.     **Application Inaccuracies**

There is no dispute that the search warrant itself states that it is to be executed on the Hugo address. While the application describes the premises to be searched as the Hugo address, the accompanying affidavit lists the *Stacy* address as the place where there is probable cause to believe evidence of a crime is located. (*Compare* Application 1-2 *with* 1-3, Ex. 1.) At the hearing, Inspector Beinhorn stated this was a typographical error. Further, Inspector Beinhorn acknowledged that there are additional typographical errors in the application with respect to the year events occurred. Five times in the application dates in January 2010 are listed. At the hearing, however, Inspector Beinhorn testified that the year should have been 2011, rather than 2010.

In addition, the application contains multiple fonts and font sizes throughout. When asked about these irregularities, Inspector Beinhorn testified that she had used information from an application previously used to obtain a warrant for the Stacy address to prepare the application for the Hugo address.

## II.

Defendant now seeks suppression of the evidence. He argues: (1) the warrant is not supported by probable cause establishing a nexus between the Hugo address and the contraband, and (2) the good-faith exception cannot save the warrant. Based on the foregoing Findings, the undersigned Magistrate Judge makes the following:

## CONCLUSIONS OF LAW

**A.      Motion to Suppress Evidence**

For a search warrant to be issued, probable cause must be shown. U.S. Const. amend. IV; *United States v. Williams*, 477 F.3d 554, 557 (8th Cir. 2007). "Probable cause exists if the warrant application and affidavit describe circumstances showing 'a fair probability that contraband or evidence of a crime will be found in a particular place . . . .'" *United States v. Montes-Medina*, 570 F.3d 1052, 1059 (8th Cir. 2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)). Rather than being easily defined, probable cause is instead considered "a fluid concept . . . not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232. Search warrant "[a]pplication affidavits are considered under the totality of the circumstances . . . and 'should be read with common sense and not in a grudging, hyper technical fashion.'" *United States v. Swope*, 542 F.3d 609, 616 (8th Cir. 2008) (quoting *United States v. Goodson*, 165 F.3d 610, 613 (8th Cir. 1999), *cert denied*, 527 U.S. 1030 (1999)). For a warrant to be issued, there must be evidence of a nexus between the contraband and the place to be searched. *United States v. Keele*, 589 F.3d 940, 943 (8th Cir. 2009). When reviewing probable cause, great deference is given to the determination of the issuing judicial officer. *Id.*; *United States v. Smith*, 581 F.3d 692, 694 (8th Cir. 2009).

The warrant application here contains several assertions that, "when read in a commonsense manner . . . are sufficient to support a finding of probable cause," *Montes-Medina*, 570 F.3d at 1060, that contraband would be found at the Hugo address. The affidavit asserts that the name of the folder containing the pornographic images was

"krystalviolet3930@yahoo.com." This email address profile included a picture of K.N., who was also identified as the adult woman in the pornographic images. Subsequent subpoenas showed that, on three occasions, the krystalviolet3930@yahoo.com email address was logged into via an IP address assigned to the Hugo address. Furthermore, the database search conducted by the Toronto Police Department identified the Hugo address as K.N.'s address. Therefore, these facts establish a nexus between the contraband—child pornography—and the Hugo address: law enforcement traced the source of the child pornography to the account of an individual listed as residing at the Hugo address and determined that the account had been recently accessed from IP addresses assigned to the Hugo address. *See United States v. Freeman*, Crim. No. 10-68 (JRT/RLE), 2010 WL 4386897, at *11 (D. Minn. May 13, 2010) (establishing a nexus between child pornography and a residence based on an email account, an IP address, and the home address to which the IP address was assigned), *adopted by* 2010 WL 4386874 (D. Minn. Oct. 28, 2010); *United States v. Anderson*, Crim. No. 07-236 (RHK/JJG), 2007 WL 2908172, at *2 (D. Minn. Oct. 2, 2007) ("If a defendant is implicated in distribution of child pornography on the internet and accesses the internet from home, there is also a fair probability that such contraband will be found there."). While Defendant argues that there are no facts connecting K.N. to the Hugo address, both public records and K.N.'s online activity link K.N. to the Hugo address. Additionally, a Sheriff's deputy believed that the deck and fence at the Hugo address matched those featured in a picture of K.N.

  This information may not be evidence beyond a reasonable doubt that contraband will be found at the Hugo address, nor need it be. All that must be established is a fair

probability that evidence will be in the place to be searched. *See Montes-Medina*, 570 F.3d at 1059. Assessing the probabilities in the present factual context through the fluid concept of probable cause, that fair probability does exist. Based on the information contained in the affidavit, and the great deference given to findings of the issuing judicial officer, the affidavit contained a sufficient showing of probable cause that contraband would be found at the Hugo address.

Defendant also argues that the erroneous dates in the application render the information illogical and meaningless and the application itself insufficient. This Court disagrees. The Eighth Circuit has previously stated that inconsistency in the dates of warrants "does not eliminate probable cause." *United States v. White*, 356 F.3d 865, 869 (8th Cir. 2004). An incorrect date is a "'technicality issue' . . . that does not invalidate the search warrant." *United States v. Smith*, --- F.3d ---, 2013 WL 3942910, at *2 (8th Cir. Aug. 1, 2013); *see also United States v. Butler*, 594 F.3d 955, 961-62 (8th Cir. 2010) ("A mere typographical error does not . . . cast doubt on the affidavit's showing of probable cause to search the residence."). It follows then that even if some of the dates in the application may be incorrect, the nexus connecting the contraband to the place does not disappear. That the dates are incorrectly stated does not stale the information, nor does the Defendant argue such. Probable cause thus remains that contraband would be located at the Hugo address, and the clerical errors do not destroy it.

Nor do the erroneous dates render the information in the affidavit wholly illogical. Toronto police received the images in late December 2010, which lead to the krystalviolet3930@yahoo.com account. Toronto police subsequently commenced

communicating with K.N. using this account. Logically, communication with K.N. via this account would have taken place in early January 2011, after the account was discovered, rather than nearly a year before the images and account were known to Toronto police. Moreover, the application was prepared a mere seven days into the year 2011. Although best practices counsel against such errors, these inadvertences are ameliorated by the affidavit's discussion of the investigation's chain of events and common sense, which dictate that additional information is obtained through investigation after the incipient event.

Similarly, that the wrong address is listed in one location on the warrant application does not destroy probable cause. The application proposes to recite facts giving rise to probable cause to search the Stacey address. But, as noted above, the application also establishes probable cause to search the Hugo address. Defendant characterizes the application as a "cut and paste" job. Though such characterization is not wholly unwarranted, there is no legal correlation between facts and font sizes. The facts presented in the affidavit are sufficient to establish probable cause.

Therefore, because the information contained in the warrant application established that there was a fair probability that contraband would be present at the Hugo address, notwithstanding any typographical errors, this Court determines that probable cause to issue the search warrant existed and recommends that Defendant's Motion to suppress evidence obtained from the Hugo address be denied. *See Montes-Medina*, 570 F.3d at 1059.

B.  **Motion to Suppress Statements**

Defendant also seeks suppression of statements, admissions, and answers. (*See* Motion to Suppress Statements, Admissions, and Answers, ECF No. 21). Defendant did not present argument on this issue at the hearing and did not argue this issue in his memorandum. At the hearing, the Government presented the Court with a transcript of the interview. Without argument on this issue from Defendant, and based on the exhibit received at the hearing, this Court will recommend denying this motion

### III.

### RECOMMENDATION

Based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (ECF No. 20) be **DENIED**; and

2. Defendant's Motion to Statements, Admissions, and Answers (ECF No. 21) be **DENIED**.


Dated: August  20 , 2013            *s Tony N. Leung*
                                    United States Magistrate Judge
                                    District of Minnesota

*United States v. Strusinski*
File No. 13-cr-135 (DWF/TNL)

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection. The Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **September 4, 2013**.